## J. A. DIETRICH, Respondent, v. HANNIBAL & ST. JOSEPH RAILROAD COMPANY, Appellant.

### Kansas City Court of Appeals, May 6, 1901.

1. **Railroads:** KILLING STOCK: FENCES: INSTRUCTION. An instruction requiring a railroad to erect and maintain, on its right of way, fences sufficient to prevent horses, cattle, etc., from getting on its railroad, is erroneous since it imposes on the railroad a greater burden than the statute which requires only lawful fences.

2. ———: ———: ———: NOTICE. A railroad must have notice of the defective condition of its fences a sufficient time in which to make repairs before the happening of the injury, or it will not be liable therefor.

3. ———: ———: MEASURE OF DAMAGES: EVIDENCE. An instruction fixing the measure of damages for stock injured at the difference in their value just before and just after the injury, together with reasonable expenses incurred and the value of time spent in a reasonable endeavor to restore them to their former condition, is condemned since there is no evidence as to their value immediately after their injury.

4. **Damages:** DUTY OF INJURED PARTY: REDUCING DAMAGES. It is the duty of a party to protect himself from the injurious consequences of the wrong act of another, if he can do so by ordinary effort and at moderate expense, and he may charge the wrongdoer therewith, but he can not recover for making his loss greater than it reasonably would have been.

5. ———: MEASURE OF: EVIDENCE. Certain evidence is noted and held as not tending to show the value of the injured stock just after the accident.

Appeal from Livingston Circuit Court.—*Hon. E. J. Broaddus,* Judge.

REVERSED AND REMANDED.

*Spencer & Mosman* and *Frank Sheetz & Sons* for appellant.

(1)　The court erred in giving the plaintiff's instruction numbered one.　Cecil v. Railroad, 47 Mo. 246; Luckie v. Railroad, 67 Mo. 245; Cunningham v. Railroad, 70 Mo. 202; Hudgens v. Railroad, 79 Mo. 418; Henson v. Railroad, 34 Mo. App. 636; Montgomery v. Railroad, 90 Mo. 451.　(2) We ask the court to note that the instruction required the defendant to have not only a lawful fence, as described in the fifth instruction, but a fence that was "sufficient to prevent horses, cattle, mules and other animals from getting on its railroad." This made the defendant an insurer.　Rutledge v. Railroad, 78 Mo. loc. cit. 291; Nixon v. Railroad, 141 Mo. loc. cit. 437; Young v. Railroad, 82 Mo. loc. cit. 429; Case v. Railroad, 75 Mo. loc. cit. 668.　(3)　Said instruction was further defective, in that it allowed the defendant no time after notice in which to repair the fence.　Young v. Railroad, 82 Mo. 427; Clardy v. Railroad, 73 Mo. 576.　(4)　It was error to give plaintiff's third instruction.　It declared that "if you believe from the evidence in this cause that any of plaintiff's animals were killed or injured by the defendant's engine and cars, that the measure of damages for the animals killed is their market value at the time of the collision." etc.　No such damages were pleaded.　If such damages were in any case recoverable they are necessarily special in their nature and must be set forth by appropriate averments in the petition.　O'Leary v. Rowan, 31 Mo. 117; Madison v. Railroad, 60 Mo. App. 599; Slaughter v. Railroad, 116 Mo. 269; Gerdes v. Iron Co., 124 Mo. loc. cit. 360.

*Paul D. Kitt* and *John L. Schmitz* for respondent.

(1)   The court did not err in giving plaintiff's first instruction. R. S. 1899, sec. 1105; Henson v. Railroad, 34 Mo. App. 636; Montgomery v. Railroad, 90 Mo. 451. (2) This instruction does not make the railroad an insurer in any manner; it follows the statute. R. S. 1899, sec. 1105. (3) The appellant can not complain that this instruction did not recognize the law requiring the jury to find that appellant had due notice of the defective condition of the fence. Townsley v. Railroad, 89 Mo. 31; Clardy v. Railroad, 73 Mo. 576; Chubbuck v. Railroad, 77 Mo. 591; Vinyard v. Railroad, 80 Mo. 92; Young v. Railroad, 82 Mo. 427. (4) No error was committed in giving plaintiff's third instruction. This instruction gave the jury the correct measure of damages in cases of this nature. Harrison v. Railroad, 88 Mo. 625; Price v. Barnard, 70 Mo. App. 175; Barrett v. Telegraph Co., 42 Mo. App. 542; Moehring v. Railroad, 66 Tex. 241; Brown v. Railroad, 99 Mo. 310.

SMITH, P. J.—This is an action which was based on section 1105, Revised Statutes 1899, and brought before a justice of the peace to recover damages under that section for injuries to five head of steers, the property of the plaintiff. The plaintiff had judgment in the circuit court, where the cause had been removed by defendant's appeal. One of the grounds upon which the defendant seeks to reverse the judgment is that the plaintiff's first instruction is erroneous. It undertook to outline to the jury the duty required of the defendant by said section 1105, but failed to do so in that it told the jury that defendant was required to erect and maintain lawful fences along the sides of its railroad where it passes through, along or adjoins inclosed or cultivated fields or uninclosed lands *"sufficient to prevent horses, cattle, mules and other animals from getting on its railroad,"* etc. The duty imposed by the italicized words of this

instruction is in excess of that required by said section 1105. Under this instruction, even though the defendant erected and maintained a lawful fence along the sides of its road where required by said section, still it would be liable unless such lawful fence was sufficient to prevent horses, etc., from getting on its railroad. It goes too far. According to the rule it asserts, if a breachy animal of any one of the kinds specified in this section should escape from an inclosure by jumping over or breaking through a lawful fence and enter upon such railroad and there collide with a passing train, the railroad company would be liable in damages for any injury resulting thereby to such animal. If this instruction be a correct expression of the law, then the erection and maintaining by a railroad company of lawful fences on the sides of its road where required by said section, affords it no protection or immunity whatever. A railroad company would be just as well off without such fences as with them. The statute enjoins no such duty, and consequently the said instruction must for that reason be condemned as erroneous.

This instruction is further erroneous in declaring that if the defendant had notice of the defective condition of the fence, there was liability without reference to whether there was any sufficient time in which to make the repairs intervening between the receipt of the notice and the injury. Young v. Railway, 82 Mo. 427; Clardy v. Railway, 73 Mo. 575.

The plaintiff's second instruction declared in substance that, even though there was no evidence tending to show actual knowledge of the collision nor any eyewitness thereto, yet, it— the jury—was authorized to infer a collision from the facts and circumstances disclosed by the evidence. In view of the evidence we think this instruction open to no serious objection.

The plaintiff's third instruction was to the effect that, if the plaintiff's steers were injured in a collision with defend-

ant's cars, the measure of damages for those of them not killed
but injured was the difference in their value just before and
just after the injury, together with the reasonable expenses in-
curred and the value of time spent in a reasonable endeavor to
restore such steers to their former condition.    The undisputed
evidence showed that the market value of the steers just before
the injury was fifty-five dollars each.    One of them died from
the injuries received in the collision and shortly after it took
place.    The injuries to the other four were not so severe.    The
plaintiff bestowed upon these latter special care and attention
for thirty days.    They were thereby measureably restored to
their former condition.    The reasonable value of the care and
attention so bestowed was twenty-five cents per day, or a total
of seven dollars and fifty cents per head.    Three of them, when
they got well of their injuries, were sold to a neighboring
butcher for seventy-five dollars and one of them, about three
months after the injury, was shipped with twenty-nine others
of the same lot—but none of which others were in the collision
—to Kansas City and there sold for thirty dollars.    These
cattle would probably have all died from their injuries but for
the attention given them by plaintiff.

"It is the duty of a party to protect himself from the in-
jurious consequences of the wrongful act of another if he can do
so by ordinary effort and care and at a moderate and reasona-
ble expense, and for such reasonable exertion and expense in
that behalf expended he may charge the wrongdoer; and where
by the use of such means he may limit and prevent further loss
he can only recover such loss as could thus be prevented."    If
a person chooses to make his loss greater than it need reasona-
bly have been, he can not  thereby make his claim on the wrong-
doer any greater.    3 Parsons, 178; Field on Dam., 19.

The measure of damages in ordinary cases, where the pro-
perty is not entirely lost or destroyed, or practically or sub-

Dietrich v. H. & St. J. Ry. Co.

stantially so, but is only impaired in value or partially des-troyed, is the difference between the value before the injury and immediately thereafter, and the reasonable expense incur-red or value of time spent in reasonable endeavors to preserve or restore the property injured. Field on Dam., 621; 3 Allen Rep., 594. In the case just cited where A's horse was injured through the negligence of defendant's servants, the damages allowable were held to be the "reasonable expense of the treat-ment of the injured horse by the veterinary surgeon, the value of the horse's services during the disability and the difference in his value before and immediately after the injury; unless the injuries were of a character to make it probable that all rea-sonable efforts and moderate expense to cure or restore the animal would be useless, he could incur such moderate and reasonable expense and give such reasonable attention to her for that purpose, for which he could have charged the defendant, whatever the result might have been, and recovered therefor as part of his damages the sums thus reasonably expended and the value of his labor." Harrison v. Railway, 88 Mo. 625. In this last-cited case it is in effect stated that the rule just quoted is applicable in cases arising under said section 1105.

The only evidence adduced as to the value of the steers just after the injury was that they were of no value; but this does not seem to be true, for it was shown that four of the five—at an expense of seven dollars and fifty cents per head for care bestowed in endeavoring to restore them—were made to be worth one hundred and seven dollars. Now, it is easy enough to see that had the steers been shown to have been of any speci-fied value just after the injury, the damages would have been the difference between that value and the seven dollars and fifty cents per head for the care bestowed in the endeavor to restore them, and their value just before the injury. Here, as already stated, it is not disclosed by the evidence that the steers were

of any value immediately after the injury, but we know that they must have been of some value because the plaintiff, by a certain outlay, was enabled to realize from a sale of them a sum much in excess of such outlay. It is quite apparent that the plaintiff has sustained damage by reason of the injury to his steers. The rule laid down by the instruction under consideration, it seems to us, is inapplicable to the evidence. Evidence that the plaintiff was at an expense of seven dollars and fifty cents per head for the care and attention, added to the amount for which they sold three months after the injury, did not tend to prove their value just after it happened. The price of such cattle might have greatly declined on the market between the date of the injury and that of the sale, or for insufficiency of pasturage, grain, feed, water or from other causes, they may have greatly reduced in flesh, and so being were unfit for market. .

The less the value of the cattle were shown to be immediately after the injury the greater of course would be the plaintiff's damages, since, under the law, his damages would be the difference in the value thereof just before and just after the injury. Evidence of the kind referred to is too remote and uncertain to prove the value immediately after the injury. If the amount for which the cattle sold three months after the injury could be shown in evidence to prove their value just after the injury, why may not the amount for which they would sell six or twelve months thereafter be shown to prove such value as well? The rule enunciated by the instruction finds no sufficient support in the evidence to justify the giving of it. It is plain to be seen that the four steers that were injured and did not die were of some value just after the injury. If the plaintiff had shown that value and that of the reasonable care and attention required in curing them, his prima facie case would have been established and his instruction applicable. No doubt the value

of the cattle just after the injury, as well as before it, are facts alike susceptible of proof. Those who saw them just after the injury if qualified could testify to that fact. An approximate estimate is all that would be possible, or could be reasonably required in such case, for in their condition they would have no market value.

No serious objection is seen as to the plaintiff's fifth instruction.

It follows that, on account of the errors to which we have referred, the judgment will be reversed and the cause remanded. *Ellison, J.,* concurs; *Broaddus, J.,* not sitting.