WILLIAM MUNKERS, Respondent, *vs.* THE KANSAS CITY, ST. JOSEPH & COUNCIL BLUFFS RAILROAD CO., Appellant.

1. *Railroads—Relinquishment of right of way to road "along section line," meaning of.*—Under an agreement relinquishing to a railroad company a right of way one hundred feet wide, over a tract of land situated in two sections of a township, the railroad was to be located " on the section line." *Held*, that the company would not forfeit its right to the land, because its track was not laid immediately on and along the section line, provided that it was constructed within the limits of the one hundred feet, and that this strip embraced that line.

2. *Pleadings—Damages caused by diversion of stream; by surface water—Variance.*—Where plaintiff charges that his land was flooded and damaged, by the diversion, by a railroad company, of a stream of water from its natural channel, he cannot recover, on proof showing that the injuries were caused solely by surface water. And the distinction between the cases and the relative liability of the company should be explained to the jury under appropriate instructions.

*Appeal from Andrew Circuit Court.*

*W. P. Hall, with C. A. Mossman,* for Appellant.

I. The grant is for a right of way one hundred feet wide. The railroad had the right to use the whole of said one hundred feet for railroad purposes. The term " Railroad," has no proper application as signifying road bed or track. The term " road bed" or " track" has such a signification, and is the proper term to use in the grant, if intended to be given only on the condition that the road bed was located on the line.

Particular words as, " on the line of a railroad," in a contract for the sale of land do not necessarily imply that the land is bounded on one side by a railroad. (Burnham vs. Bank, 45 Mo., 349 ; Marshall vs. St. L. & I. M. R. R., 51 Mo., 138 ; Chicago vs. Sheldon, 9 Wal., 50.)

We contend that the terms of the deed are satisfied, if any portion of the right of way is on the section line, and includes it.

II. There was no evidence of the turning of a stream or natural water-course, and for the diversion of surface water, to prevent it coming on our land, we are not liable. (McCormack vs. K. C., St. Jo. & C. B. R. R. Co., 57 Mo., 433 ;

Parks vs. City of Newburyport, 10 Gray, 28; Gannon vs. Hagardon, 10 Allen, 106; Flagg vs. City of Worcester, 13 Gray, 601; Inhabitants of Franklin vs. Fisk, 13 Allen, 211; Ashley vs. Wolcat, 11 Cush., 192; Turner vs. Inhabitants of Dartmouth, 13 Allen, 291; City of Bangor vs. Lanril, 51 Me., 521; Luther vs. Winnesemet Co., 9 Cush., 171; Hoyt vs. Hudson, 27 Wis., 656.)

*J. P. Altgeld,* for Respondent.

I. The term "railroad" in this case, must be construed according to its commonly accepted meaning in the community at large, not according to its meaning among a particular class; the object being to determine how the parties understood it at the time the contract was made. (Pavey vs. Bush, 3 Mo., 447; 1 Blacks., 59; 14 Mo., 3; 13 Mo., 191; 16 Mo., 436; 25 Mo., 13; 2 Sto. Cont., 1; 2 Pars. Cont., 5 ed. p. 494.) And as used in the community, and particularly in farming communities, it is understood to mean the embankment or road bed, together with the ties and rails. Therefore, when respondent inserted in the conveyance of right of way the condition that the road should be built on the section line, he meant that the road bed should be built on it, and, moreover, the testimony shows that it was so understood by all parties at the time of the conveyance. (2 Gray, 274.) The "one hundred feet" are always determined by measuring fifty feet each way from the centre of the road. For, whenever the road or road bed makes a curve, the "one hundred feet curve with it, and whenever you shift the road bed you shift the "one hundred feet."

II. On the question of flooding, the instructions given by the court were favorable to the defendant and appellant, and the judgment should not be molested. (1 Redf. Railw., 290, 296, 333; 2 Kennan, N. Y., 486; Easterbrook vs. Erie R. R. Co., 51 Barb., ——; McCormack vs. K. C., St. Jo. & C. B. R. R., 57 Mo., 433.)

HOUGH, Judge, delivered the opinion of the court.

The petition in this case contained three counts. The third was abandoned at the trial and need not be further noticed. The first count claimed damages from the defendant, as the successor of the Missouri Valley Railroad Company, under and by virtue of certain statutes of the State, and alleged that said last named company without leave, and wrongfully, entered upon the lands of the plaintiff in Andrew county, Missouri, and broke up and graded, and rendered useless to the plaintiff, a strip of land one hundred feet wide and one hundred and sixty rods long, and occupied and used said strip for railroad purposes, and excluded the plaintiff from any benefit, use or enjoyment thereof, and that said unlawful entry, use and occupation has since been continued and maintained by the defendant, as the successor of said Missouri Valley Railroad Company.

The second count alleged that the said Missouri Valley Railroad Company, by negligently grading its said railroad, and making insufficient and worthless culverts, water-gaps and ditches, along the line thereof, obstructed and diverted from its natural course and channel a certain stream of water, which had never before flowed upon or flooded the plaintiff's land, and thereby caused said water to stand upon and flood about fifty acres of plaintiff's cultivated fields, and that the defendant, as the successor of said Company, has ever since maintained said railroad with its defective culverts, water-gaps and ditches, and has thereby continued to flood plaintiff's said land as aforesaid.

The defendant denied the unlawful entry and damage alleged in the first count, and averred that the Missouri Valley Railroad Company entered upon the premises in question, and constructed its said road over the said land, and that the defendant had ever since maintained the same, under and by virtue of a grant from the plaintiff to the said Missouri Valley Railroad Company, its successors and assigns, of the right of way over the same, for a width of one hundred feet, for rail-

road purposes, and not otherwise. The defendant denied all negligence and injury alleged in the second count, and relied upon the grant of the right of way, set up in its answer to the first count, and averred that all ditches, culverts and embankments constructed by the Missouri Valley Railroad Company, and maintained by the defendant, were constructed and maintained under and by virtue of said grant, and were necessary in the construction and operation of said railroad, and that the same were lawfully made in pursuance of said grant.

The plaintiff replied, denying that the defendant's road was constructed in pursuance of the alleged grant, and averred that by the terms of said grant the track of defendant's road should have been located on the line dividing sections 26 and 27, whereas it was built and being operated several rods east of said dividing line; and further denied all allegations in defendant's answer to the second count.

There was a verdict and judgment for plaintiff on both counts, and defendant has appealed to this court.

The grant of the right of way, pleaded by defendant, is as follows:

" Relinquishment of right of way. In consideration of five dollars in hand paid, I hereby release, relinquish and convey to the Missouri Valley Railroad Company, its successors and assigns, the right of way for a railroad, to a width of one hundred feet, along such line as may be located by said company across and over the tract of land situate in section .27 and section 26, Andrew county, in the State of Missouri, known as the north half of said sections, the railroad to be located on the section line dividing those two sections 26 and 27, town. 61, R. 35. As witness my hand and seal, the 22nd day of November, A. D., 1867.

WM. MUNKERS. [Seal.]

Attest, JOSEPH E. KUMPFALL."

It is very earnestly contended on behalf of the respondent, that by the terms of this relinquishment, the Missouri Valley Railroad Company was required to construct its track immediately on and along the section line, and that failing to do

so, said company, and the defendant as its successor, could claim no rights whatever under said relinquishment, and occupied no better position than trespassers.

It is difficult to conceive why the plaintiff should grant to the railroad company a strip of land one hundred feet in width, for railroad purposes, if the company was to be limited in the enjoyment of such grant, to a strip of the width only of its road bed, or track; and such strip to be located precisely upon the section line. One hundred feet in width having been granted for railroad purposes, the company had an undoubted right to use every portion thereof, for such purposes; and all that could be lawfully required of the company, was, that it should construct its track or tracks within the limits of the one hundred feet. The word *railroad*, says a leading lexicographer, should be confined to the highway in which the railway is laid, and the word, *railway* to the rails when laid, and this is declared to be a useful distinction. This distinction seems to have been observed in our statute in the third subdivision of the second section, relating to railroad corporations, where power is given to every such corporation to lay out its *road* not exceeding one hundred feet in width. We all know, however, that in common parlance these words are used interchangeably; but we think the only rational interpretation of this instrument is, that the strip of one hundred feet in width was to be located on the section line, and that said line and the defendant's track were both to be included in the said one hundred feet. This was doubtless the intention of the parties at the time, and if the object had been to have a track upon the section line, and nowhere else, entirely different language would have been employed.

The Circuit Court refused an instruction based upon the construction here given to the plaintiff's grant, and of its own motion, gave one to the effect that it was the duty of the Mo. Valley R. R. Co., to construct its track upon and along the section line; and in this we think the court erred. The defendant was entitled to a verdict on the first count.

Damages were claimed, in the second count, for a diversion, by the defendant, in the manner therein stated, of a certain stream of water from its natural course and channel, whereby plaintiff's fields were flooded. There was testimony tending to show that no natural water course was interfered with by the defendant, but that the plaintiff was injured alone by surface water. If plaintiff's injuries were occasioned by flooding from surface water, and not by the diversion, by the defendant, or its predecessor, of a natural water course, then there could be no recovery on the second count. This question should have been submitted to the jury under instructions explaining the difference between surface water and a natural water course, and defining the duties and liabilities of the defendant arising from the construction and operation of its road across or along a running stream. This was not done.

. The judgment will be reversed and the cause remanded ; the other judges concur, except Judge Sherwood, who is absent.